IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

Civil Action No. 24-CV-229

RICHARD DAVID PERROTTA, BRYAN SCOTT PERROTTA, and PHYLLIS JEANETTE PERROTTA,

*Plaintiffs*,

vs.

BEKINS VAN LINES, INC., an Indiana Corporation,

*Defendant*.

**COMPLAINT AND JURY DEMAND**

Plaintiffs Richard D. Perrotta, Bryan S. Perrotta, and Phyllis J. Perrotta ("**Plaintiffs**"), by and through his undersigned counsel, hereby allege as follows:

**PARTIES**

1. Plaintiff Richard D. Perrotta is an individual and citizen of Troutman, Iredell County, North Carolina, capable of suing and being sued. Plaintiff goes by the shortened version of his name, "Rich," in daily practice.

2. Plaintiff Bryan S. Perrotta is an individual and citizen of Mooresville, Iredell County, North Carolina, capable of suing and being sued.

3. Plaintiff Phyllis J. Perrotta is an individual and citizen of Troutman, Iredell County, North Carolina, capable of suing and being sued.

4. Plaintiffs, at all times relevant to this action, were the owners of the items of personal property that are the subject of this action, and were "Shippers" within the meaning of 49 U.S.C. § 14706, the Carmack Amendment.

1

5. Upon information and belief, defendant Bekins Van Lines, Inc. ("**Defendant**") is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 8010 CASTLETON ROAD, INDIANAPOLIS, IN, 46250, USA.

6. Upon information and belief, Defendant is engaged in the business of moving and transporting goods, including but not limited to, household furnishings and personal effects of its customers, between locations within the United States, crossing state lines in doing so.

7. Defendant transacts business as a "motor carrier" within the meaning 49 U.S.C. § 13102, operating under a grant of authority by the Surface Transportation Board.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this action is between citizens of different States and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Further, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this matter arises under a law of the United States, namely (but without limitation) 49 U.S.C. § 14706.

9. Venue is appropriate in the United States District Court, Western District of North Carolina (the "District") pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred, and Plaintiffs sustained damages, in this District.

10. Defendant regularly transacts business within this District in that it regularly moves goods to and throughout this District, and in the case at bar, specifically contracted with the Plaintiffs to move the Plaintiffs' household goods and furnishings to a location in this District, namely the Plaintiffs' home in Troutman, Iredell County, North Carolina.

# FACTS

11. Plaintiffs formerly resided in Aurora, Colorado, until or about October 2021.

12. Intending to move to western North Carolina Plaintiffs contacted Defendant agent, American Moving and Storage during or about Fall 2021.

13. Plaintiffs own and owned numerous items of unique and valuable furniture, antiques, appliances, and other personal property.

14. On or about September 30, 2021, Plaintiffs contracted with Defendant to move Plaintiffs' personal property from Colorado to Troutman, North Carolina.

15. At the time, Defendant, by and through its expressly authorized agent, made certain representations to Plaintiffs that Plaintiffs' items would be packed and cared for in their transit to North Carolina.

16. The amount charged for the move, including the Full (Replacement) Level of protection, totaled $32,832.01, which included total final costs for the weight of the items moved, fees, and fuel surcharges, amongst other charges assessed by the Defendant.

17. Plaintiffs paid the bill in full in two parts, with one payment of $30,317.04 being made on or about January 13, 2022, and a second payment of $2,514.97 being made on or about February 9, 2022, both of which payments were made prior to the purported final delivery and accounting of Plaintiffs' goods.

18. Defendant issued a bill of lading acknowledging Plaintiffs' declaration of value and selection of the Full (Replacement) Level of Protection for Plaintiffs' personal property on October 11, 2021.

19. Defendant contracted to pack and load Plaintiffs' personal property; this packing and loading process took place on October 8, 9, 10, and 11, 2021. Defendant further agreed by

3

contract to store said property for approximately two months, and deliver said property between on or around November 23, 2021.

20. The delivery of the Plaintiffs' household items was not completed by November 23, 2021, with the Defendant blaming its inability to procure a driver for the delivery.

21. In mid to late December, 2021, Defendant secured a driver to transport one truckload of the Plaintiffs' property, and that driver loaded the truck in mid to late December 2021 with Plaintiffs' goods.

22. The driver then determined that he had mechanical issues and would not be able to make a cross-country trip to deliver the Plaintiffs' household goods, and instead of securing the property, the Defendants allowed their driver to park the tractor-trailer loaded with a significant portion of the Plaintiffs' property in an unknown, unsecured, outdoor location, upon information and belief, in or around Colorado Springs, Colorado.

23. For that three week period, Defendant allowed the tractor-trailer containing some portion of the Plaintiffs' property to sit in an unguarded, unsecured location, and kept no reasonable accounting or monitoring of the status of the property in the trailer.

24. Defendant found another driver around January 10, 2022.

25. Defendant arrived at Plaintiffs' residence with a 52 foot tractor-trailer on January 13, 2022. Not all of the Plaintiffs' property was included in this shipment, and so only a fraction of the Plaintiffs' possessions were accounted for as delivered on that date

26. On February 10, 2022, another 52 foot tractor-trailer arrived with what were purportedly the remaining items that the Plaintiffs had contracted to ship. When all of the items on that truckload were unloaded, a significant number of items and boxes were missing.

27. The Plaintiffs, working with the delivery driver, noted all of the items that were

known to be missing at that time on the delivery inventory sheets, which forms were then signed by the Defendant's driver and the Plaintiffs. Specifically, the Defendant's delivery driver marked off all of the items on the inventory sheets, and the Plaintiffs wrote "missing" next to the items that the driver had already determined were missing.

28. A true and accurate copy of the delivery inventory sheets is attached hereto as "**Exhibit A**," and the list of lost and/or damaged items is incorporated in this Complaint by Reference.

29. Bekins was unable to locate the missing property, and advised the Plaintiffs to file a claim with them for lost and damaged goods.

30. Defendant sent unskilled and untrained individuals to care for Plaintiffs' items in transit and to Plaintiffs' home to unload Plaintiffs' household items. Without limitation, while unloading Plaintiffs' items that actually were delivered, Defendant's movers marked up the walls of Plaintiffs' house, two of them almost got into a fight, and were seen engaging in unprofessional and unsanitary behavior while working.

31. Plaintiffs' items of personal property were accounted for and in good condition prior to Defendant loading them into the moving trucks.

32. Defendant failed to properly load, pack and/or secure Plaintiffs' belongings, and failed to appropriately account for, track, and monitor the location of those belongings while in their care or in the care of their agent(s).

33. Defendant failed to deliver a significant quantity of Plaintiffs' property and Plaintiffs have still not been placed in possession of said property.

34. These personal property items were damaged, destroyed, and/or lost by Defendant and/or Defendant's agents and employees while acting within the course and scope

of their employment and/or agency with Defendant.

35. During the time Plaintiffs' personal property was transported from Colorado to North Carolina, from October 8, 2021 to (i) January 13, 2022; and (ii) February 10, 2022; (among, upon information and belief, other delivery dates, and possibly at all times thereafter, to the extent any undelivered property remains in the possession of the Defendant), it was in the exclusive custody and control of Defendant and Defendant's agents.

36. As a direct and proximate result of Defendant's conduct, Plaintiffs suffered damage to and loss of their personal property including, but not limited to, the items shown in **Exhibit A** referenced hereinabove.

37. Plaintiffs timely notified the Defendant of the mishandling and loss of Plaintiffs' household items. Defendant's agent provided Plaintiffs with a claims form.

38. Plaintiffs, by and through Bryan Perrotta, timely submitted a claim for the loss of their possessions to Defendant. Plaintiffs provided or made available to Defendant all reasonably necessary records, valuations, estimates, and photographs relating to the lost and damaged personal property items.

39. Defendant failed and refused, and continues to fail and refuse, to fairly compensate Plaintiffs for the extensive loss and damage to Plaintiff' property caused by Defendant.

## COUNT I – STRICT LIABILITY
## CARMACK AMDMENT CLAIM

40. Plaintiffs incorporate by reference the allegations stated above as though repeated herein at length.

41. Defendant is a "motor carrier" within the meaning of the ICC Termination Act

of 1995 and operates under authority granted by the federal Surface Transportation Board.

42. Defendant issued a bill of lading or receipt to Plaintiffs for the personal property Defendant received from Plaintiffs for transport from Colorado to North Carolina.

43. Defendant was under a duty imposed by law to use due diligence and reasonable care in (a) selecting and maintaining agents sufficiently knowledgeable, fit, willing, and able to provide adequate household goods transportation services, including accessorial and terminal services, (b) caring for, securing, and maintaining possession of the Plaintiffs' goods, and (c) to fulfill the obligations imposed upon them by law and by contract, including, but not limited to, the Bill of Lading. Defendant breached and violated this duty as a result of the matters set forth above.

44. Plaintiffs' personal property listed in the bill of lading was accounted for, present on the date(s) of packing and loading by the Defendant, and in good to pristine condition at the time Defendant issued the bill of lading to Plaintiffs.

45. As a motor carrier providing transportation of household goods, Defendant is responsible for all acts or omissions of any of its agents which relate to the performance of household goods transportation services, including accessorial or terminal services.

46. While moving Plaintiffs' property from Colorado to North Carolina, and prior to delivery, Defendant and/or Defendant's agent(s) caused actual loss or damage to the property Defendant received from Plaintiffs.

47. Plaintiffs' actual losses are in excess of $118,174.20, which has been determined as follows:

    a. Original claim amount minus duplicate items, with a total value in the amount of $80,098.20;

7

Case 5:24-cv-00229-KDB-DCK   Document 1   Filed 10/23/24   Page 7 of 9

b. Reimbursement of freight charges on the items listed on the initial claims forms in the amount of $2,208.00;

   c. Additional items timely submitted on supplemental forms during the claims process in the amount of $30,300.00; and

   d. Reimbursement of freight charges for additional items in the amount of $5,568.00.

48. Pursuant to 49 U.S.C. § 14706, Defendant is liable for the actual loss and injury to Plaintiffs' property in an amount to be proven at the trial of this action.

49. Plaintiffs are entitled to recover costs, interest, and attorneys' fees pursuant to 49 C.F.R. § 375 et seq. and/or other applicable law.

## FACTS

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully seek a judgment in its favor and against the Defendant as follows:

1. FOR A TRIAL BY JURY ON ALL ISSUES SO TRIABLE;

2. Plaintiffs have and recover from Defendant Bekins Van Lines, Inc. ("Defendant") a sum in excess of $118,174.20, plus interest thereon as provided by law as compensation for Defendant's loss, destruction and/or damage to Plaintiffs' property.

3. Plaintiffs have and recover from Defendant the costs of this action and attorneys' fees as well as interest to the extent allowed by law;

4. The costs of this action be taxed against Defendant; and

5. For such other and further relief as the Court deems just and proper.

Dated:  October 22, 2024	Respectfully submitted,

**POPE MCMILLAN, P.A.**
*Attorneys for the Plaintiffs*


By:/s/ Clark D. Tew_____
Clark D. Tew
State Bar No. 41632
113 N. Center Street, Suite 200
Statesville, North Carolina 28677
Tel.: (704) 873-2131
Fax.: (704) 872-7629
Email:  ctew@popemcmillan.com